SCHOTT, Judge.
This is an appeal by the wife from a portion of a judgment which made accrued alimony pendente lite for the support of the wife and children executory in the amount of $874.00, the wife’s position being that the correct amount of the ar-rearages was $3,168.00.
When the rule was tried several other matters were before the Court including an action by the husband to annul the judgment of separation (dismissed by the trial judge), a rule by the husband to reduce alimony (made absolute in his favor effective July, 1972) and rules by the husband and wife to hold each other in contempt of court (both dismissed), but the husband did not take an appeal nor did he answer the wife’s appeal, and the wife has limited her appeal to the question of the amount of past due alimony to be made executory.
The judgment providing the foundation for the wife’s claim was signed on August 23, 1971, and provided that the husband was to pay $100.00 per week for the support of the two children and $75.00 per week alimony pendente lite for the wife, beginning on August 27, 1971. The judgment also provided for payment to the wife of 50% of any bonuses received by the husband from his employer.
It is the wife’s position that she is entitled to the sum of $3,168.00, composed of $2,118.00 of arrearages in the weekly payments of $175.00 and $1050.00 of one-half of a bonus received by her husband.
Based upon a schedule of payments prepared by the wife, and stipulated by the husband to be accurate, the husband has paid a total of $5718.05, beginning with $100.00 on August 20, 1971, and ending *231 with a payment of $100.00 on June 30, 1972, the date of the judgment appealed from.
At the trial of the rule the wife admitted that an agreement was made at the end of 1971 between her and her husband under which the weekly payments were fixed at $146.15 per month, beginning January 7, 1972. In this Court she argues that the agreement is not binding on her, citing Russo v. Russo, 205 La. 852, 18 So.2d 318, for the proposition that a husband and wife cannot contract with each other during the existence of the marriage. But an analysis of her testimony shows that she continued to acquiesce in receiving the reduced figure of $146.15, beginning on January 7, and likewise waived her claim to one-half of the bonuses paid to the husband over this period. This can be seen from her following testimony:
“Q. Isn’t it not a fact that you ultimately did agree ?
A. One forty-six fifteen.
Q. For $146.15?
A. That’s right and that’s all I expected.
Q. And you did receive approximately $146.00 up until around February, 1972?
A. That’s right.
Q. Now you are coming to Court and you want to put your husband in contempt for not paying $175.00?
A. No, $146.15 which he agreed to.
Q. Is that what the figures are based on?
A. Not these.
MR. COHEN:
I had asked Mrs. Chaplin to compute it on the judgment based on $175.00.
THE COURT:
When was the other signed?
THE WITNESS:
In December.
THE COURT:
You signed that?
THE WITNESS:
Yes, it was supposed to be effective January 1st.
MR. COHEN:
There was never any judgment entered into by the Court. It was simply between them.
MR. MARCAL:
Q. Now Mrs. Chaplin, did your husband abide by that agreement, and I’m not talking about whether it had any effect or whether it was legal, did your husband more or less abide by that agreement you signed ?
A. Only for six weeks.
* * * * * *
“Q. Now Mrs. Chaplin, you say he abided by the agreement, correct?
A. For six weeks.
Q. Do you remember more or less the terms of that agreement?
A. Yes. I don’t remember them exactly. He drew them up, $75.00 for alimony, the rest for child support with an increase at the rate of the increased standard of living.
Q. Now Mrs. Chaplin, in that agreement did it mention anything about the bonuses ?
A. No.
Q. Is it a fair statement now to say now by that agreement—
A. By that agreement I should not have received a bonus, right, and I wouldn’t be here if he had adhered to the agreement because I’m satisfied with that.
Q. Now as to the bonuses, in other words, now today you are coming into Court and saying that you want half of the bonuses?
A. If I don’t get my one hundred and forty-six dollars I should get what I’m entitled to.
Q. Yet you did make this agreement?
*232 A. Yes I did.” (Emphasis supplied)
We conclude under the unusual circumstances of this case that the wife in effect amended her demand and was seeking only $146.15 per month at the time of trial.
As a result of the foregoing and an analysis of the schedule of papers prepared by the wife, it appears that a total of $7124.90 was due by the husband to the wife, consisting of $175.00 per week for 19 weeks from August 27 through December 31, 1971, and $146.15 per week for 26 weeks from January 7 through June 30, 1972, on which the husband paid a total of $5718.05, leaving a balance of $1406.85.
Accordingly, the judgment appealed from is affirmed but amended so that there is judgment in favor of Barbara Mayrson, wife of Sidney A. Chaplin and against Sidney A. Chaplin in the sum of $1406.85 for alimony arrearages accruing through June 30, 1972.
Amended and affirmed.